Denisa Buljubasic
CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD DAHL, | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF |
| CITY OF SPOKANE, a municipal government; DAVID CONDON, mayor of the city of Spokane; SPOKANE POLICE DEPARTMENT, an agency of the City of Spokane; CRAIG MEIDL, chief of Spokane Police Department; and DAVE SINGLEY, Spokane Police Department Captain. | |
| Defendants. | |

Plaintiff, Richard Dahl, alleges the following:

## I.    INTRODUCTION

The City of Spokane has organized a campaign against its homeless citizens with a series of ill-planned, ruthlessly executed and cruel raids designed to harass these citizens and essentially drive them away. The alleged violations of the United States Constitution, the Washington State Constitution and Washington State law arise out of the sweep and cleanup of a homeless encampment known as "Camp Hope."

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF - 1

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

Plaintiff is a single male who at all times material was homeless and a resident of Camp Hope. Beginning in November through December 09, 2018, Plaintiff resided in a tent in front of Spokane City Hall as part of Camp Hope. Camp Hope was a homeless encampment formed to protest the city of Spokane's lack of shelter space and frustration with the lack of shelter space available for the homeless population. Due to limited shelter space, residents had no choice but to sleep in tents. The residents of Camp Hope kept the encampment clean and the encampment even had a porta potty. On December 06, 2018, residents of Camp Hope received a 48-hour notice to move all of their belongings. On December 07, 2018, a number of "pre-deprivation" hearings were held and on December 09, 2018, Defendants cleared all of the tents used as housing by the residents of Camp Hope. All of the residents' tents and personal belongings were thrown away into a garbage truck. Defendants had no plan, nor did they make any attempt, to store the residents' property, identify & retain items of value, or preserve the property in any way. Any resident, including Plaintiff, who attempted to retrieve their personal possessions, were threatened with arrest.

The practice and conduct of the Defendants in threatening to arrest Plaintiff simply for surviving, not having the financial resources to obtain housing and having no other place to go, violated the Plaintiff's constitutional rights to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution.

The Defendants' seizure and destruction of Plaintiffs' property was an illegal taking of private property. The Defendants' failure to develop procedures to retain Plaintiff's property and failure to give Plaintiff the opportunity to retrieve his property caused Plaintiff to suffer loss due to the Defendants' illegal taking and destruction of his property and constituted conversion of his property by Defendants. The practice and conduct of the City in disposing of Plaintiff's personal

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 2

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

property, when there was a less intrusive means available, was an unreasonable seizure, and violated the Plaintiff's constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution.

Defendants' sham of "pre-deprivation" hearings lacked even the slightest due process protections. Residents were not permitted to question witnesses, bring up Constitutional defenses or present any defense during the pre-deprivation hearing. Every single resident, who had a pre-deprivation hearing, received the same result and no appeal process was provided. In fact, due to confusion and chaos, Plaintiff did not even have an opportunity to have a pre-deprivation hearing, although he requested one. Defendants' failure to provide even the slightest due process protections violated Plaintiff's constitutional rights to due process as guaranteed by Article 1 §3 of the Washington State Constitution.

Defendants' desire to end Camp Hope residents' protest of the City's unlawful treatment and harassment of its homeless citizens led to a violation of Plaintiff's right to peacefully assemble as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution and Article 1 §4 of the Washington State Constitution.

Plaintiff seeks damages and equitable relief to ensure that the City does not continue its unlawful actions against its homeless citizens.

## II.    PARTIES

1.    Plaintiff, Richard Dahl, at all times material, was/is a resident of the City of Spokane, State of Washington. At all times material, Plaintiff was "Homeless" as Housing and Urban Development (HUD) and the City of Spokane (Hereafter "City") define the term. HUD and the City define "homeless" as "People who are living in a place not meant for human habitation, in

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 3

emergency shelter, in transitional housing, or are exiting an institution where they temporarily resided."

2.   At all times material, upon information and belief, defendant, City of Spokane (hereinafter "City") is a municipal government located within the State of Washington and within the jurisdiction of the United States District Court for the Eastern District of Washington. The homeless encampment known as "Camp Hope" was located in the City of Spokane.  The City is the legal and political governmental entity responsible for the actions of the Spokane Police Department, its officials, agents, and employees.

3.   At all times material, upon information and belief, defendant, Spokane Police Department, is an agency of the City of Spokane.

4.   At all times material, upon information and belief, defendant David Condon was the elected Mayor of the City of Spokane. As the mayor of the city of Spokane, defendant Condon, acting in his official capacity as an agent of the City of Spokane, failed to provide adequate shelter space for the homeless population in the City and played an integral role in the constitutional violations that occurred during the cleanup of the homeless encampment known as "Camp Hope".

5.   At all times material, upon information and belief, defendant Craig Meidl was the Chief of the Spokane Police Department. As the Police Chief of the Spokane Police Department, defendant Meidl, acting in his official capacity as an agent of the Spokane Police Department and the City of Spokane, instructed City of Spokane officers to oversee the cleanup of the homeless encampment known as "Camp Hope".

6.   At all times material, upon information and belief defendant, Dave Singley, was a

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 4

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

Captain of the Spokane Police Department's downtown precinct. As the Captain of the Spokane Police Department's downtown precinct, defendant Singley, acting in his official capacity as an agent of the Spokane Police Department and the City of Spokane, was assigned to conduct the pre-deprivation hearings and did so conduct the pre-deprivation hearings.

7.  The acts complained of herein were intentionally and jointly committed, and will continue to be committed jointly and systematically by defendants unless restrained by this Court.

### III.    JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) & (4).

9.  This Court has subject matter jurisdiction under 42 U.S.C. § 1983.

10. This Court has jurisdiction over the subject matter of this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202

11. This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as these claims are related to the Federal law claims, arise out of a common nucleus of related facts, and are part of the same case or controversy.

12. The claims arose in the Eastern District of Washington. On information and belief, all parties reside and/or are located in the Eastern District of Washington and all the acts and/or omissions complained of herein have occurred or will occur in the Eastern District of Washington. Venue in this action is proper in the District of Eastern Washington under 28 U.S.C. §1391(b).

### IV.    STATEMENT OF FACTS

A. *Overview of Spokane Municipal Code and Shelter Space*

13. Section 12.02.1002 of Spokane Municipal Code criminalizes camping anywhere

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 5

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

within the city limits.

Section 12.02.1002 states:

A. "Camp" or "camping" shall mean residing on or using public property for living accommodation purposes, as exemplified by remaining for prolonged or repetitious periods of time not associated with ordinary use of such public property with one's personal possessions (including but not limited to clothing, sleeping bags, bedrolls, blankets, sheets, cots, tarpaulins, hammocks, luggage, backpacks, kitchen utensils, cookware, or similar material), sleeping or making preparations to sleep, storing personal belongings as above defined, regularly cooking or consuming meals. This ordinance will not be enforced if there is no available shelter space for the individual/s engaging in otherwise prohibited camping conduct.

B. "Public property" shall mean any property including but not limited to parks, riverbanks, waterways, conservation areas, natural areas, rights of way, easements, buildings, bridges, or other land or physical structures owned or managed by the City or other governmental agency.

14. Further, Section 12.02.1010 Unauthorized Camping on Public Property – Violation states:

A. No person may camp in or upon any public property including, but not limited to, conservation lands and natural areas abutting the Spokane River and its tributaries unless specifically authorized by declaration of the Mayor in emergency circumstances.
B. A violation of this section is a misdemeanor.
C. Unless otherwise subject to custodial arrest under RCW 10.31.100, individuals subject to enforcement under this section shall be cited and released rather than being booked into jail.
D. With the exception of those who do not meet the criteria for acceptance into community court, individuals subject to enforcement under this chapter shall be directed to community court by officer referral.

15. Up until September 2018, House of Charity, a homeless shelter located in the City of Spokane, State of Washington, with funding from and by agreement of City of Spokane, provided 24/7 shelter space to homeless individuals.

16. House of Charity was built to sleep 109 men.

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 6

17. In the months prior to September 2018, House of Charity was sleeping close to 400 individuals.

18. Due to the large number of individuals utilizing its services, in the spring of 2018, House of Charity requested a large increase in funding from the City of Spokane.

19. In May 2018, the City of Spokane denied additional funding for the 24/7 shelter at House of Charity.

20. Due to the lack of funding, House of Charity ended its 24/7 shelter in September. 2018. This led to hundreds of people losing shelter.

21. At the time the City of Spokane denied additional funding for the 24/7 shelter, it did not have any replacement shelters planned.

22. A number of City of Spokane Councilmembers expressed frustration with defendant Condon for taking away shelter space without a plan in place to shelter hundreds of displaced homeless individuals.

23. The City of Spokane failed to present any plan to keep homeless individuals sheltered and out of freezing temperatures until sometime at the end of August. The City knew that hundreds of individuals would lose shelter in May 2018, when it denied additional funding to House of Charity.

24. The City of Spokane failed to make appropriate accommodations for its homeless citizens and did not open any warming centers until December 2018.

25. In October 2018, the average temperature in Spokane was 48.1° Fahrenheit with an average low of 38.1° Fahrenheit.

26. In November 2018, the average temperature in Spokane was 36.95° Fahrenheit with an average low of 31° Fahrenheit.

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 7

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

27. In December 2018, the average temperature in Spokane was 29.95° Fahrenheit with an average low of 25.8° Fahrenheit.

28. In December, the City opened up warming centers for homeless individuals to sleep in during the night. The warming centers were closed during the day.

29. On December 1, 2018, the City opened a Warming Center at 527 South Cannon Street (Cannon Street warming center). The Cannon street warming center was for adult men and women, no pets or children were permitted.

30. The Cannon Street warming center was operable from 7:00 p.m. until 7:00 a.m. and had a capacity of forty (40) people.

31. On December 8, 2018, the City opened a second warming center at Salem Lutheran Church (Salem Warming Center). The Salem Warming Center was for adult men and women.

32. The Salem Warming Center was operable from 9:00 p.m. until 7:00 a.m. and had a capacity of sixty (60) people.

33. On December 22, 2018, the City opened a third warming center at Westminster Church (Westminster Warming Center). The Westminster warming center was for young adults (18-24 years of age), was operable form 9:00 p.m. until 7:00 a.m. and had a capacity of twenty-five (25) people.

34. Families with minor children were directed to Family Promise Open Doors at 631 South Richard Allen Court, Spokane, WA 99202.

35. Remaining overflow for adult women were directed to House of Charity at 32 West Pacific Avenue, Spokane, WA 99201.

36. The warming centers were not homeless shelters.

37. A homeless shelter provides essential services like showers, food, and beds. Truth

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 8

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

Ministries, a homeless shelter located in the City of Spokane, provides 54 beds, a meal and a shower.

38. Homeless shelters are a type of homeless service agency that provides temporary residence for homeless individuals and families. Shelters exist to provide residents with safety and protection from exposure to the weather while simultaneously reducing the environmental impact on the community.

39. A warming center is a short-term emergency space that is only operational when certain conditions are met. Generally, warming centers operate when temperatures become dangerously inclement. Therefore, the temporary warming centers did not qualify as Shelters.

40. The warming centers did not provide meals, a bed, or a place for individuals to store their personal belongings during the day.

41. The fact that houseless individuals could not utilize the warming centers during the day, eat a meal, shower or store any personal belongings, differentiates the warming centers from a homeless shelter.

42. The warming center provided short-term overnight shelter. Individuals were forced to move all of their personal belongings out at 7:00 a.m. Making matters worse, pursuant to section 12.02.010 of the Spokane Municipal Code, houseless individuals could not rest or lie on any public property and were forced to move around for at least 12 hours, sometimes longer, all while carrying their personal belongings, in the snow and in freezing temperatures.

43. The Defendants enforce section 12.02.010 of the Spokane Municipal Code frequently and broadly. The ban on camping, defined as, "residing on or using public property for living accommodation purposes by remaining for prolonged or repetitious periods of time not associated with ordinary use of such public property with one's personal possessions", amounts

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 9

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

to a complete ban on sleeping, lying down, or sitting, in effect banning the basic necessities of life.

44. Section 12.02.010 of the Spokane Municipal Code explicitly states that the City will not enforce the ordinance if there is no available shelter space for individuals engaging in otherwise prohibited camping conduct.

45. The Spokane Municipal code does not define "Shelter Space".

46. Even in the event that the warming centers met the definition of shelter under the Spokane Municipal Code, there were no warming centers open at the time that Plaintiff's property was seized and destroyed by Defendants.

47. According to the closest Point in Time Homeless Count carried out on January 24th, 2019, there were 613 homeless individuals living in emergency shelters, and 315 people who were unsheltered.

48. At the time of day that the Plaintiffs' property was seized, there were no available shelter beds.

49. While there were a number of warming centers that had just opened up during the preceding week, they were closed on the morning of December 09, 2019 at 9:00 a.m.

50. Federal Law defines a "Homeless Individual" to include one who lacks a fixed, regular and adequate nighttime residence, or one who resides in a shelter, transitional housing, or a place not ordinarily used for sleeping accommodations.

51. Most of the available shelter space in Spokane does not allow its facilities to be occupied during the day. Catholic Charities House of Charity has check-in between 7:00 p.m. and 8:00 p.m. and wake up time is at 5:30 a.m.

52. All of the warming centers that were opened in December 2018 closed sometime in

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 10

May 2019.

53. Without regard to the lack of shelter space available, the city of Spokane continues its policy, custom, and/or practice of hasty cleanups of homeless encampments in violation of residents' United States Constitutional rights.

54. The City of Spokane has developed the "encampment migration project" which implements even quicker "cleanup" of homeless encampments.

55. The launch and development of the encampment migration project shows the City of Spokane's policy, custom, or practice of haste cleanup of homeless encampments without regard to individual's Constitutional rights.

56. The City of Spokane in collaboration with City of Spokane Police, continues to issue 48-hour notices to move property to residents of homeless encampments.

57. As recently as January 2019, the City has conducted a cleanup of a homeless encampment located on the underpass of Browne Street in the City of Spokane pursuant to a 48-hour notice to remove property. Any property left behind at the expiration of the 48-hour notice was thrown away.

58. In fact, the City of Spokane conducts weekly sweeps of the Browne Street underpass.

59. In May 2019, the City cleared out a homeless encampment located at Liberty Park in the City of Spokane.

60. The City continues its policy, custom, or practice of posting 48-hour notices and not making any changes to ensure due process, fair and equitable pre-deprivation hearings, or the storage of property left behind by homeless residents.

61. Sections 12.02.1001 or 12.02.1010 of the Spokane Municipal code do not authorize the seizure or removal of property form encampment, or anywhere else.

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

*B. Effect of Enforcement:*

62. Spokane Municipal Code 12.02.010 criminalizes the houseless population for engaging in behavior that is a basic necessity of life, such as sleeping.

63. Numerous citations or convictions under section 12.02.010 of the Spokane Municipal Code for camping in public have a detrimental effect on an individual's health and ability to find and continue employment, housing and/or received governmental benefits.

64. Individuals cited for violating SMC 12.02.010 ordinarily cannot afford to pay the fines associated with the citations.

65. Due to the lack of homeless shelter space, houseless individuals often do not have a telephone number or permanent address where they can receive mail. This makes is almost impossible to receive any communications from the court.

66. Individuals cited for violating SMC 12.02.010 typically lack reliable transportation and are therefore more likely not to appear for hearings. If an individual fails to appear, additional penalties are assessed.

67. Community Court is held by Spokane Municipal Court and "seeks to reduce and properly address quality of life offenses in the downtown area by utilizing a collaborative, problem-solving approach to crime" and "[t]he program is focused on addressing quality of life crimes in the downtown corridor." (Attached brochure).

68. Community Court is only available to certain individuals. Community Court in the city of Spokane is limited to arrests that are made in a particular geographic are of the city that is just a fraction of the whole city (see attached map).

69. Individuals who are not eligible for referral to Community Court may be subject to

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 12

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

additional penalties and incarcerations, which only worsens the situation. Incarceration is disruptive and expensive, and periods of incarceration interrupt employment, social security benefits, and health and family relationships.

70. Homeless individuals must disclose criminal convictions, even for misdemeanors, on applications for public housing. These convictions become a matter of public record. As a result, the convictions may cause them to lose the opportunity to obtain permanent public and private housing. Additionally, an individual may lose an opportunity for housing if he or she is incarcerated. Incarceration also interferes with Social Security disability benefits, which may not be received during periods of incarceration.

71. Individuals must also disclose criminal convictions when they apply for employment, and even misdemeanor charges may reduce the chance that an employer will hire an applicant. Missing work due to required court appearances and periods of incarceration may also lead to loss of employment and income.

72. Defendants' policy custom, and practice of issuing citations to, arresting, and harassing homeless individuals like the Plaintiff under SMC 12.02.1010 has the effect of criminalizing homelessness. These measures do not accomplish any significant or legitimate public policy goals. Instead, they perpetuate the cycle of homelessness by decreasing opportunities for homeless individuals to find housing and gainful employment and take care of their health needs.

73. Sleep and rest is a physical and mental necessity for people to properly function.

74. Lack of sleep or rest causes disruptions in cognitive function and exacerbates a number of physical and mental health problems. SMC 12.02.1010 makes it illegal for individuals to lie or rest on any public property. Therefore, individuals must move for at least 12 hours each day until

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 13

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the warming centers open again. This is inhumane and unrealistic for a majority of the city's population.

C. *"Camp Hope" Specific Facts:*

75. Plaintiff Richard Dahl is a homeless individual residing in the City of Spokane, State of Washington.

76. In November 2018, an encampment known as "Camp Hope" was formed in protest of the unconstitutional and inhumane policies promulgated by the City of Spokane that negatively impacted the houseless population.

77. Camp Hope was located adjacent to the Spokane City Hall at 808 West Spokane Falls Blvd., Spokane, WA,

78. Since its inception, on or about November 12, 2018, Mr. Dahl lived at Camp Hope and continued to live there until the camp was cleared out by the City on December 9, 2018.

79. During his residence at Camp Hope, Mr. Dahl lived in his tent which contained all of his personal belongings.

80. On November 24, 2018, a 48-hour notice to remove property was posted on tents within the Camp Hope Encampment. The notice informed residents that they had a right to request a pre-deprivation hearing prior to the removal and that all items of obvious value would be stored.

81. No action on the 48-hour notice was taken by the City of Spokane or the Spokane Police Department.

82. On December 6, 2018, a second 48-hour notice to remove Property was posted on the tents of all residents of Camp Hope. The notice stated that all property must be removed by December 8, 2018 and informed residents of their right to a pre-deprivation hearing.

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 14

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

83. The 48-hour notice also sates that items of obvious value, that clearly identify the owner, will be stored for safekeeping by the Spokane Police Department

84. Defendants' made no effort to identify items of obvious value, instead all of Plaintiff's belongings were thrown away.

85. Neither sections 12.02.1001 or 12.02.1010 of the Spokane Municipal code authorize the seizure or removal of property from encampments, or anywhere else.

86. In response to the 48-hour notice posed on December 6, 2018, residents posted a protest notice on their tents. The notice stated, "we the people are protesting the laws that criminalize homelessness." The notice further stated "We request that the city provide 24/7 shelter that accommodates storage of personal belongings and gear so we can job search + access services. Thank you!"

87. On December 7, 2018, a number of pre-deprivation hearings were held at City Hall. The pre-deprivation hearings were conducted by Captain Dave Singley, a City of Spokane police officer who was acting in his official capacity. Additionally, Luis Garcia, the Enforcement Supervisor for the City of Spokane Code Enforcement, who was acting in his official capacity, was present for many of the post-deprivation hearings.

88. The post-deprivation hearings conducted by Captain Singley failed to provide even the most basic due process protections. Camp Hope residents were not permitted to take testimony, cross-examine or question any witnesses, or challenge the 48-hour notice on constitutional grounds. The pre-deprivation hearings were hearings in name only, with pre-ordained results.

89. All pre-deprivation hearings conducted on December 07, 2018 had the exact same outcome.

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

90. The pre-deprivation hearings did not provide an appeal process.

91. Mr. Dahl requested a pre-deprivation hearing. However, due to the number of hearings, the rush by the City to conduct the hearings, and confusion, Mr. Dahl did not have a pre-deprivation hearing.

92. On December 8, 2018, a large number of the Spokane community, arrived at Camp Hope and its vicinity to express their support for the individuals residing at Camp Hope.

93. No action was taken by Defendants to remove any property from Camp Hope on December 8, 2018, the expiration of the 48-hour notice.

94. On December 9, 2018 Mr. Dahl was present at Camp Hope and all of his belongings were located within the Camp Hope Encampment.

95. On the morning of December 9, 2018, City of Spokane Police Officers, at the direction Craig Meidl, who was acting in his official capacity as the chief of the Spokane Police Department, blocked off access to Camp Hope by blocking off Post Street with their vehicles.

96. A group of Spokane Police Department officers asked Mr. Dahl to move across the Street and Mr. Dahl complied. All of Mr. Dahl's personal belongings, including his tent, remained within the Camp Hope Encampment.

97. The City of Spokane and work crews threw all remaining personal possessions located within the Camp Hope Encampment into a garbage truck.

98. The City did not store any of the tents or other personal belongings. The City, with reckless disregard for the health and safety of the residents of Camp Hope, simply threw away all homes and personal possessions.

99. Mr. Dahl was forbidden from accessing any of his property located within the Camp Hope Encampment. At one point, Mr. Dahl stepped into the street in an attempt to retrieve some

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

of his belongings, and was informed that if he crossed into the Camp Hope Encampment he would be trespassed and arrested for obstruction.

100. In fact, during the cleanup of Camp Hope, two individuals were arrested for obstruction and/or trespassing by the Spokane Police Department.

101. All of Mr. Dahl's belongings, including his home, were destroyed.

102. Mr. Dahl has yet to obtain his own housing.

## V. CLAIM FOR RELIEF
### 42 U.S.C. § 1983 VIOLATIONS

#### 1. *First Amendment to the U.S. Constitution*

103. Plaintiff incorporates herein by this reference as though fully set forth each and every word, averment, and allegation set forth in paragraphs 1 through 102 and further avers and alleges as follows:

104. Defendants' above described customs, policies, practices and conduct of clearing up homeless encampments whose residents are protesting lack of shelter space violated Plaintiff's right to peaceful assembly under the First Amendment, as incorporated against these Defendants by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

105. Plaintiff posted a protest notice on his tent indicating that he was exercising his First Amendment right to protest the lack of shelter space available.

106. By forcing residents and Plaintiff to move, the City intentionally and recklessly disregarded the Plaintiff's exercise of his Constitutional right to peaceful assembly as guaranteed by the First and Fourteenth Amendment of the United States Constitution.

#### 2. *Fourth and Fourteenth Amendments to the U.S. Constitution*

107. Plaintiff incorporates herein by this reference as though fully set forth each and

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

every word, averment, and allegation set forth in paragraphs 1 through 102 and further avers and alleges as follows:

108.    Defendants' above-described customs, policies, practices and conduct of confiscating and destroying Plaintiff's home and personal property without a warrant, probable cause, exigent circumstances or adequate notice violates Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment as incorporated against these Defendants by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

109.    Forces beyond Plaintiff's control, like unemployment, health, poverty and failure on the part of the Defendants to plan for and provide adequate shelter space, have compelled Plaintiff and other similarly situated homeless individual to live, eat, sleep and store all of their possession in a public place.

110.    Plaintiff has a protected interest in his personal belongings.

111.    Defendants failed to provide Plaintiff with procedural due process. Specifically, Defendants' pre-deprivation hearing was fraudulent, misleading and a terrible attempt in simulating a hearing that had no possibility of allowing Plaintiff to remain on the property, or to store their belongings there.

112.    Defendants failed to provide Plaintiff with procedural due process. Specifically, Defendants' post-deprivation procedures are inadequate because the Defendants' policies and practices are to destroy any seized property. Defendant made no plans to procure a location to store Plaintiff's seized property.

113.    Under color of state law, Defendants have a custom and practice of failing to

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 18

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

timely provide for post-deprivation due process, including a meaningful and adequate hearing capable of restoring the Plaintiff's property, constituted an unreasonable search and seizure of Plaintiff's personal property in violation Fourth and Fourteenth Amendment to the United States Constitution.

114.    Defendants' above-described customs, policies, practices and conduct of confiscating and destroying Plaintiff's personal property without warrant, probable cause, due process, exigent circumstances, and when there are less obtrusive and destructive alternatives available, violated the Plaintiff's well-established rights under the Fourth Amendment to the United States Constitution, as incorporated in and applied to the States through the Fourteenth Amendment.

### 3.   *Eighth and Fourteenth Amendments to the U.S. Constitution*

115.    Plaintiff incorporates herein by this reference as though fully set forth each and every word, averment, and allegation set forth in paragraphs 1 through 102 and further avers and alleges as follows:

116.    Defendants' above-described customs, policies, practices and conduct of confiscating and destroying Plaintiff's home and personal property without an opportunity to be heard, opportunity to retrieve his home or personal belongings, or lawful excuse or justification violates Plaintiff's right to be free from unreasonable searches and seizures and to be free from cruel and unusual punishment under the Eighth Amendment as incorporated against these Defendants by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

117.    Spokane Municipal Code 12.02.1002(A) (2018) specifically prohibits the

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 19

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

enforcement of the camping ordinance, even when an individual is engaged in prohibited camping conduct, if no shelter space is available.

118.    Camp Hope was dismantled by the City on December 09, 2018 at approximately 10:00 a.m. At that time, no warming centers were open and no other shelter space was available to the Plaintiff.

119.    Plaintiff was homeless and was unable to comply with the Spokane Municipal Code. The City's destruction of Camp Hope and of Plaintiff's home and personal property criminalizes homelessness. Criminalization of homelessness, even when the Spokane Municipal Code specifically prohibits the enforcement of its own camping ordinance, violated the Plaintiffs' well-established rights under the Eighth Amendment as incorporated against these Defendants by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

## WASHINGTON STATE CONSTITUTIONAL VIOLATIONS

### 4.   *Article I, § 3 of the Washington Constitution (Due Process of Law)*

120.    Plaintiff incorporates herein by this reference as though fully set forth each and every word, averment, and allegation set forth in paragraphs 1 through 102 and further avers and alleges as follows:

121.    Defendants' policy, pattern, and/or custom of seizing and destroying the individual Plaintiffs' property without adequate notice and opportunity to be heard prior to destruction of their property violates the individual Plaintiff's right to due process of law protected by Article I, § 3 of the Washington Constitution.

122.    Plaintiff had no opportunity to be heard and no appeal process was provided by the City.

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 20

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

123.    Plaintiff had no way of retrieving his home or personal property.

124.    Defendants' customs, policies, and conduct of destroying Plaintiff's property without an adequate hearing, opportunity to be heard, or ability to retrieve confiscated property violated well-established principles of Due Process as enumerated in Article 1 § 3 of the Washington State Constitution.

### 5. *Article I, § 4 of the Washington Constitution (Right to Assemble)*

125.    Plaintiff incorporates herein by this reference as though fully set forth each and every word, averment, and allegation set forth in paragraphs 1 through 102 and further avers and alleges as follows:

126.    Defendants' policy, pattern, and/or custom of prohibiting the individual Plaintiff's right to peacefully assemble violates the individual Plaintiff's right to freedom of speech protected by Article I, § 4 of the Washington Constitution.

127.    Plaintiff posted a protest notice on his tent indicating that he was exercising his right to protest the lack of shelter space available.

128.    Defendants' above described customs, policies, practices and conduct of clearing up homeless encampments whose residents are protesting lack of shelter space violate Plaintiff's right to peaceful assembly under Article I, § 4 of the Washington State Constitution.

## STATE LAW VIOLATIONS

### 6. *Conversion*

129.    Plaintiff incorporates herein by this reference as though fully set forth each and every word, averment, and allegation set forth in paragraphs 1 through 102 and further avers and alleges as follows:

130.    Plaintiff was at all relevant times the owner of personal property confiscated and

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 21

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

destroyed by Defendants as alleged above. Plaintiff remains entitled to the possession of his home and his personal property.

131.    Defendants intentionally exercised control or dominion over Plaintiff's property that seriously interfered with Plaintiff's right of possession. Specifically, Defendants, pursuant to the above-described policies, practices, and conduct, confiscated Plaintiff's property and thereby caused Plaintiff to be deprived of its possession, appropriated the property, and destroyed the property and failed to store as required by law.

132.    The personal property confiscated and destroyed by Defendants included tents, blankets, clothing, and personal items, all of which were particularly valuable to Plaintiff because the belongings amounted to most, if not all, of the relatively few possessions that the Plaintiff owned.

133.    Plaintiff made a Claim for Damages with the City of Spokane on February 26, 2019. That claim was denied.

134.    Defendants' above-described customs, policies, practices, and conduct denied Plaintiff the possession of his property and constituted an unlawful conversion of that property to the possession and control of defendants.

## VI.    JURY DEMAND

135.    Plaintiff demands a jury trial.

## VII.    PRAYER FOR RELIEF

Wherefore, having stated his complaint against the defendants, Plaintiff prays for the following relief:

1.    For a temporary restraining order, preliminary injunction and permanent injunction,

    enjoining and restraining Defendants from continuing or repeating the unlawful customs,

    policies, practices and conduct complained of herein;

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 22

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

2. For a declaratory judgment that Defendants' customs, policies, practices and conduct as alleged herein were or are in violation of Plaintiff's rights under the United States Constitution, the Washington State Constitution and the laws of Washington State.

3. Award Plaintiff compensatory damages and punitive damages, as permitted by law, from Defendants, plus interest from the date of the judgment on the First Claim for Relief stated above, in an amount to be proven at trial.

4. Award Plaintiff compensatory damages and punitive damages, as permitted by law, from Defendants, plus interest from the date of the judgment on the Second Claim for Relief stated above, in an amount to be proven at trial.

5. Award Plaintiff compensatory damages and punitive damages, as permitted by law, from Defendants, plus interest from the date of the judgment on the Third Claim for Relief stated above, in an amount to be proven at trial.

6. Award Plaintiff compensatory damages and punitive damages, as permitted by law, from Defendants, plus interest from the date of the judgment on the Fourth Claim for Relief stated above, in an amount to be proven at trial.

7. Award Plaintiff compensatory damages and punitive damages, as permitted by law, from Defendants, plus interest from the date of the judgment on the Fifth Claim for Relief stated above, in an amount to be proven at trial.

8. Award Plaintiff compensatory damages and punitive damages, as permitted by law, from Defendants, plus interest from the date of the judgment on the Sixth Claim for Relief stated above, in an amount to be proven at trial.

9. An award of costs and attorney's fees as provided in 42 USC § 1988, and other provisions of statutory and common law;

CENTER FOR JUSTICE
35 West Main, Suite 300
Spokane, WA 99201
T: (509) 835-5211
F: (509) 835-3867

10. For such other and further relief as the court may deem just and proper

DATED this 17th day of July, 2019.

CENTER FOR JUSTICE

/s/ Denisa Buljubasic
Denisa Buljubasic, WSBA #48395
denisa@cforjustice.org
Attorney for Plaintiff
F: (509) 835-3867

COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE
AND DECLARATORY RELIEF - 24